**Opinion filed February 28, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00263-CV

_____

## IN THE INTEREST OF F.H.P., A CHILD

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-3081-PC**

## M E M O R A N D U M   O P I N I O N

The trial court entered an order terminating the parental rights of both the mother and the unknown father of F.H.P. The mother has filed a notice of appeal from the termination order. We affirm.

Appellant presents two issues for review. In those issues, she asserts that the evidence is legally and factually insufficient to support the finding that termination is in the best interest of F.H.P.

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012). To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To

determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. Section 161.001. In this case, the trial court found that Appellant committed four of the acts listed in Section 161.001(1). The trial court found that Appellant had knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child, that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being, that Appellant had constructively abandoned the child, and that Appellant had failed to comply with the provisions of a court order stating the actions necessary for her to obtain the return of the child. *See id.* § 161.001(1)(D), (E), (N), (O). Appellant does not challenge the findings made pursuant to Section 161.001(1). Any one of these unchallenged findings was sufficient to support termination as long as termination was shown to be in the child's best interest. *See id.* § 161.001. The trial court also found that termination was in the child's best interest. *See id.* § 161.001(2).

The question before us is whether the best interest finding is supported by legally and factually sufficient evidence. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one

or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The Department of Family and Protective Services became involved with Appellant and F.H.P. on July 26, 2011, the day after F.H.P. was born. According to the Department's conservatorship supervisor, Lindsey Holmes, both Appellant and F.H.P. had tested positive for cocaine at the time of F.H.P.'s birth. Because cocaine was still in Appellant's system, she was advised that she should not breast-feed F.H.P. Despite the warning, Appellant was discovered breast-feeding F.H.P. During the investigation by the Department, Appellant admitted that she had smoked marihuana throughout the course of her pregnancy.

Appellant was ordered to complete various services as part of her family service plan. She did not complete any of those services and failed to remain in contact with the Department. The Department was able to track Appellant's whereabouts only during various periods of incarceration. At the time of the final hearing in this case on July 10, 2012, Appellant had been incarcerated in "TDC" for more than four months for a felony "possession" conviction. According to Holmes, Appellant did not visit F.H.P. one single time and did not initiate any of her services under the family service plan. Appellant did not report having any job. Appellant had a seven-year-old child that lived with Appellant's parents. About two weeks before the trial in this case, Appellant, while incarcerated, gave birth to another baby, who was also removed by the Department. Appellant informed the Department that her parents "would not be willing to help her again with her children." Appellant supplied many different names as possible fathers for F.H.P. The two men for whom Appellant provided both a first and a last name were located, but both were excluded by DNA testing as being F.H.P.'s father.

Appellant testified at trial via telephone. She denied using cocaine while she was pregnant and suggested that the reason she and F.H.P. tested positive was because the cocaine "was around me. And I didn't even know it was around me." Appellant indicated that she had been unable to perform her service plan because she had been in jail or prison for all but forty-four days since F.H.P.'s birth. She testified that she attempted to initiate her services and to set up an appointment to see F.H.P. during that time. Appellant said that she would complete her service plan when she was released from prison in November and that she just wanted "a chance to get [her] kids back." Appellant did not dispute that she had been arrested and incarcerated numerous times prior to F.H.P.'s birth: 2003 for theft, 2004 for theft, August 2006 for public

intoxication, February 2007 for failure to display a driver's license, July 2007 for possession of drug paraphernalia, August 2008 for failing to maintain proof of financial responsibility, May 2009 for failing to maintain proof of financial responsibility and for evading arrest and detention, October 2009 for leaving the scene of an accident, May 2010 for failure to appear, September 2010 for failure to ID, and December 2010 for evading arrest and detention. Subsequent to F.H.P.'s birth, Appellant was arrested in November 2011 for public intoxication, leaving the scene of an accident, unauthorized use of a vehicle, and possession of a controlled substance.

The Department's ultimate goal for F.H.P. was to be adopted by the foster parents with whom she had been placed since July 2011. Holmes testified that F.H.P. had bonded with her foster family and that F.H.P. was healthy, developmentally on target, and thriving in her foster home. The foster parents provided a safe and stable home and would ensure that F.H.P. gets any medical or dental care that she may need in the future. Holmes testified that the termination of Appellant's parental rights would be in the child's best interest.

Based upon the evidence in the record, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence; the trial court could reasonably have formed a firm belief or conviction that it would be in F.H.P.'s best interest for Appellant's parental rights to be terminated. The evidence is both legally and factually sufficient to support the best interest finding. Appellant's first and second issues are overruled.

We affirm the trial court's order terminating the parental rights of the mother of F.H.P.


JIM R. WRIGHT
CHIEF JUSTICE


February 28, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.